FILED

2013 MAY -9 AM 11: 30

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

FILED
CLERK, U.S. DISTRICT COURT

MAY - 9 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CR 13- |
| | ) | **CR13-0323** |
| Plaintiff, | ) | |
| | ) | I N F O R M A T I O N |
| v. | ) | |
| | ) | [18 U.S.C. § 287: False, |
| ALFRED WONG, | ) | Fictitious, and Fraudulent |
| | ) | Claim] |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

Alfred Wong and Associated Entities

1.   Prior to January 2005, defendant ALFRED WONG ("WONG") was a professor of physics at the University of California at Los Angeles.

2.   In or about October 1996, defendant WONG founded Non-Linear Ion Dynamics, Inc. ("NID"), a for-profit company headquartered in Van Nuys, California, to apply various inventions in the commercial world.

//

DOB

3.   In or about November 2002, defendant WONG founded Alfred Wong Technologies ("AWT"), a for-profit company headquartered in Beverly Hills, California, to manage various patent rights.

Defense Advanced Research Projects Agency Contract

4.   On or about June 30, 2005, the Defense Advanced Research Projects Agency ("DARPA"), entered into contract N66001-05-C-8027 with NID.  This contract was a cost-plus fixed fee contract with a total estimated award amount of less than $1 million.  The purpose of the DARPA contract was to conduct basic research into the feasibility of a nano technology battery based upon radiation emitted from a radioactive isotope.

5.   The cost-plus contract consisted of a base period and two option periods to be exercised if the government wished to continue research.  The base period of the contract, called Phase One, identified the following estimated costs:

$60,000 for equipment purchases;

$200,000 for fabrication materials and labor;

$10,000 for supplies;

$92,000 for consultants;

$446,000 for direct labor; and

$20,000 for travel.

6.   The battery in its experimental form consisted of five basic components:

- a radioactive isotope such as Polonium or Plutonium, that radiates alpha particles as it decays;

- an inert gas such as Krypton;

- a high-work function electrode, such as gold;

2

1  - a low-work function electrode, such as Magnesium or Mixed
2  Oxide Tungsten; and
3  - an enclosure, such as a glass cylinder, or in a research
4  setting, a glass glove-box.
5  7.  In concept, when the isotope and inert gas are placed
6  within an enclosure, alpha particles radiating from the
7  naturally decaying isotope react with the inert gas, forming a
8  plasma with free electrons.  These charged particles will
9  migrate from a low-work function electrode to a high-work
10  function electrode also placed within the enclosure.  These
11  migrating particles create an electric current that can be
12  transported through a circuit.
13  8.  Electrodes with higher surface areas can transport
14  current more efficiently.  To increase the surface area of the
15  electrode, the contract envisioned fashioning "nanotips,"
16  microscopic, rough surfaces onto the high-work function
17  electrode.
18  9.  During the course of the project, NID postulated that
19  by layering in an array multiple "ultra-thin electrodes" so thin
20  that alpha particles could pass through them, the battery could
21  produce more current.
22  10.  The contract contemplated the manufacture of a battery
23  that could be incorporated into nanotechnology devices.  NID
24  proposed to embed a series of these miniature batteries into
25  enclosures, or "wells," placed onto a machinable ceramic base.
26  By connecting multiple batteries, each enclosed in a well, NID
27  proposed to increase the total voltage.
28  //

3

Related-Party Invoices & Vouchers Submitted to the United States

11.   On January 11, 2006, defendant WONG directed an employee to create two invoices from AWT to NID.  The first invoice, dated November 30, 2005, charged NID $80,000 for the microelectro mechanical systems fabrication of six wells, with gold plating in the wells and gold connection pads, and another six wells, with aluminum plate in the wells and gold connection pads.  The second invoice, dated December 31, 2005, charged NID $80,000 for eight ultra-thin electrodes made of aluminum and gold with a copper rim and four plates consisting of 200 nanotips each made with gold.

12.   On or about January 12, 2006, the fraudulent invoices were incorporated by NID into Voucher 12 that was presented to DARPA.  On or about January 26, 2006, DARPA caused this voucher to be paid.

Fraudulent Nature of the Invoices

13.   None of the items listed in the two invoices described above were manufactured by AWT.  AWT had no employees other than defendant WONG, no manufacturing facilities, and expended no funds in the fabrication of these items.

14.   The nanotips obtained by NID were samples obtained from National Taiwan University without charge and others manufactured by an employee of the Batelle Memorial Institute at the U.S. Department of Energy's Environmental Molecular Science Laboratory ("EMSL") pursuant to a NID subcontract.  All costs incurred in connection with this manufacture totaled less than $5,000 and were either paid by DARPA pursuant to other claims for reimbursement by NID or written off as losses by Battelle.

4

15.   The ultra-thin electrodes created in connection with the project consisted of experimental efforts undertaken by two employees of NID.  The cost of these experiments consisted of the labor performed by these employees and a few hundred dollars in materials, all of which was billed elsewhere and paid by DARPA.

16.   The wells obtained by NID were manufactured by a UCLA employee at the UCLA Nanotechnology Lab.  None of the costs associated with this effort were incurred by NID.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

COUNT ONE

[18 U.S.C. § 287]

17.  The Introductory Allegations are incorporated by reference into this count as if fully re-alleged herein.

18.  On or about January 12, 2006, in Los Angeles County, within the Central District of California and elsewhere, defendant ALFRED WONG ("defendant WONG") made and presented to a department and agency of the United States, a claim upon and against the United States, knowing such claim to be false, fictitious, and fraudulent, and with the intent to defraud. More specifically, defendant WONG submitted to the Defense Advanced Research Projects Agency, a voucher issued by Non-Linear Ion Dynamics, Inc. ("NID") supported by two invoices issued by Alfred Wong Technologies ("AWT") for the microelectro mechanical systems fabrication of twelve wells and eight electrodes in the total amount of $160,000, when in truth and in fact, as defendant WONG well knew, AWT had not fabricated the wells and electrodes and NID had not incurred unreimbursed expenses in connection with their manufacture.

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Public Corruption &
      Civil Rights Section

DANIEL J. O'BRIEN
Assistant United States Attorney
Public Corruption &
      Civil Rights Section

6

COUNT ONE

[18 U.S.C. § 287]

17.   The Introductory Allegations are incorporated by reference into this count as if fully re-alleged herein.

18.   On or about January 12, 2006, in Los Angeles County, within the Central District of California and elsewhere, defendant ALFRED WONG ("defendant WONG") made and presented to a department and agency of the United States, a claim upon and against the United States, knowing such claim to be false, fictitious, and fraudulent, and with the intent to defraud. More specifically, defendant WONG submitted to the Defense Advanced Research Projects Agency, a voucher issued by Non-Linear Ion Dynamics, Inc. ("NID") supported by two invoices issued by Alfred Wong Technologies ("AWT") for the microelectro mechanical systems fabrication of twelve wells and eight electrodes in the total amount of $160,000, when in truth and in fact, as defendant WONG well knew, AWT had not fabricated the wells and electrodes and NID had not incurred unreimbursed expenses in connection with their manufacture.

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Public Corruption &
      Civil Rights Section

DANIEL J. O'BRIEN
Assistant United States Attorney
Public Corruption &
      Civil Rights Section

6